UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**VICENTE PÉREZ ACEVEDO,**
    Debtor

Chapter 13
Case No. 12-18240-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~

**VICENTE PÉREZ ACEVEDO,**
    Plaintiff
v.
**PABLO MELÉNDEZ BONILLA, NYDIA MARIA NEGRÓN CONTRERAS, LENIEL COLLAZO NAZARIO, FIRSTBANK PUERTO RICO, et al.,**
    Defendants

Adv. P. No. 13-1073

~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

    Whereas, on March 3, 2013, Vicente Pérez Acevedo, the Chapter 13 debtor in Case No. 12-18240-JNF (the "Plaintiff" or the "Debtor"), filed a Complaint against a number of defendants, including Pablo Meléndez Bonilla, Nydia María Negrón Contreras and their conjugal partnership (collectively, "Meléndez"), FirstBank Puerto Rico ("FirstBank") and Attorney Leniel Collazo Nazario ("Nazario"); and

    Whereas, in his Complaint, the Plaintiff alleged that Meléndez obtained a mortgage, which was later modified, on vacant property, located at 172-BB, Hibisco Street, Urb. Manuel Corchado Juarbe, Isablela, Puerto Rico (the "Property"), owned by a

1

now dissolved corporation known as Corporación Marcaribe Investment ("Marcaribe"), which was owned jointly by the Debtor and Meléndez; and

Whereas, the Plaintiff and Meléndez allegedly agreed to share equally the responsibility to pay the Mortgage Loan until May 26, 2011;[1] and

Whereas, the Plaintiff further alleged that Meléndez, represented by Nazario, commenced an action to sell the Property and dissolve Marcaribe[2] and that, while that action was pending, he applied for a loan modification from FirstBank with respect to the original mortgage while posing as the sole owner of the Property; and

Whereas, the Plaintiff asserted that the essential term of the loan was to extend the repayment date from July 1, 2011 to June 1, 2041; and

Whereas, the Plaintiff claimed that he discovered that the original loan was "null and void" at its origination;" and

Whereas, according to the Plaintiff, Marcaribe was dissolved on May 4, 2012, leaving issues relating to the division of the Property and financial responsibility for the mortgage unresolved; and

---

[1] Meléndez allegedly purchased the land on May 30, 2006 and obtained a mortgage from FirstBank.  Marcaribe was formed on June 10, 2006 to acquire the Property.  The Property was transferred to Marcaribe on March 12, 2007.  Although the Plaintiff alleges Marcaribe "assumed the Mortgage Loan" he did not allege that Meléndez was no longer personally liable and that Marcaribe was substituted as the mortgagor with the permission of FirstBank.

[2] The Plaintiff further alleged: "[S]uch lawsuit sought to recover purported damages and moneys from Plaintiff in relation to alleged contributions not made towards the Land.  Plaintiff disputes these allegations since he alleges that the money had been given by certified check to Meléndez on April 21, 2006 and Plaintiff has proof of the same."

Whereas, the Debtor filed a Chapter 13 case on October 10, 2012; and

Whereas, the Debtor claimed that "[o]n October 11, 2012 Debtor notified Melendez and the Court of the bankruptcy filing . . . [and that] . . . Defendants, fully aware of the bankruptcy filing and still represented by Attorney Leniel Collazo Nazarrio [sic], filed a motion with the Court requesting time to express his position in relation to Plaintiff's bankruptcy filing;"[3] and

Whereas, the Court's docket reflects that Meléndez is not listed on the creditor matrix and was not served with notice of the section 341 meeting of creditors, even though the Plaintiff alleged in his Complaint that in the Puerto Rico action issues remained as to "the property division [sic] of the Land and financial responsibility over the mortgage debt taken against the Land;" and

Whereas, the Plaintiff alleged that Nazario subsequently sought additional time to evaluate Meléndez's position, but that, on November 14, 2012, Meléndez moved to dismiss the action against the Debtor, without prejudice, relating to the collection of monies owed; and

Whereas, the Plaintiff alleged that "his interest in the Land is part of his bankruptcy estate and its recovery "is integral to the success of his Chapter 13 plan which aims to pay one hundred (100) percent of all claims;" and

---

[3] The Court may take judicial notice of its own docket. *See* LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999) ("The bankruptcy court appropriately took judicial notice of its own docket.").

3

Whereas, the Plaintiff formulated six counts in his Complaint as follows: Count I - Willful Stay Violation; Count II – Avoidance of the Transfer of Certain Real Property as a Fraudulent Transfer pursuant to which the Plaintiff stated: "Defendant's conduct, Melendez and FirstBank of Puerto Rico, violated 11 U.S.C. § 548(a)(1)(B) by granting a mortgage and a loan modification of such mortgage in violation of state law" [sic]; Count III– Imposition of a Constructive Trust on Meléndez interest [sic] in the Property that is subject to Count II; Count IV – Turnover of Real Estate Property pursuant to which the Plaintiff stated: "Defendant, Melendez and FirstBank of Puerto Rico's conduct violated 11 U.S.C. § 542;" Count V – Recovery and Preservation of Estate Assets pursuant to which the Plaintiff stated: "Defendant, Melendez and FirstBank of Puerto Rico's, conduct violated 11 U.S.C. § 550 and 551;" and Count VI – Attorneys Fees; and

Whereas, the Court issued summonses on March 4, 2013 with an answer date of April 3, 2013; and

Whereas, Carlos Utset served the summonses and copies of the Complaint by certified mail on Nazario and Meléndez on March 25, 2013;[4] and

Whereas, in addition, the Plaintiff submitted a return of service ostensibly showing that on March 16, 2013 Meléndez, his spouse and their conjugal partnership were personally served with the summons and complaint, although only their names, but not their address, were set forth on the return, and

---

[4] The service did not comply with Fed. R. Bankr. P. 7004(e).

4

Nazario filed two motions for extensions of time to answer or otherwise plead, seeking extensions, which motions were granted; and

Whereas, on April 27, 2013, after the answer date, Debtor's counsel filed a "Notice of Additional Service Executed," stating: "Plaintiff notices the Court that Defendants Pablo L. Meléndez Bonilla, Nydia María Negrón Contreras and their Conjugal Partnership composed of Pablo L. Meléndez Bonilla and Nydia María Negrón Contreras; and FirstBank Puerto Rico were served twice, also in hand, to ensure their due answer and knowledge of these proceedings;" and

Whereas, the Plaintiff did not file a return of service showing personal service upon Nazario; and

Whereas, on April 27, 2013, the Plaintiff, without moving for defaults under Fed. R. Civ. P. 55(a), filed a Motion for Entry of Default Judgment, citing Fed. R. Civ. P. 55(b) against Meléndez and FirstBank; and

Whereas, on June 5, 2013, Judge William C. Hillman granted the Plaintiff's Motion and entered a default judgment as to Pablo L. Meléndez Bonilla and Nydia María Negrón Contreras only; and

Whereas, on June 6, 2013, the Court amended its judgment to include the conjugal partnership composed of Pablo L. Meléndez Bonilla and Nydia María Negrón Contreras but not, as requested, against FirstBank, because it dismissed the Complaint against FirstBank on the same day; and

5

Whereas, on June 12, 2013, the Plaintiff filed a "Motion to Establsih [sic] and Assess of Damages [sic] after Entry of Motion for Default Judgment," seeking an order finding Meléndez liable to the Plaintiff in the total amount of $260,602.07;[5] and

---

[5] The Plaintiff set forth the following in support of his claim for damages:

> a) Defendants [Pablo L. Meléndez Bonilla, spouse, Nydia María Negrón Contreras, and their Conjugal Partnership] posed as the sole owners of land who was owned by a jointly held corporation owned by Plaintiff and the above named Defendants. As a result, the value of his shares and profit potential in such corporation devalued dramatically as, through their fraud, the sole asset of the corporation was fraudulently transferred to the Defendants who were also directors and shareholders of such corporation.
> b) Posing as sole owners of the land they were able to mortgage the same in the amount of $148, 751.00.
> c) As the actions divested and fraudulently transferred title of the only asset of the corporation, his shareholder's interest in the corporation and value of the shares were abrogated.
> d) As the actions divested and fraudulently transferred title, Plaintiff was unable to sell his shares in the company as Defendants/Shareholders/Directors fraudulently transferred away all of its capital.
> e) As the actions divested and fraudulently transferred title, Plaintiff was unable to secure potential investors to continue with a prospective development project by selling the permits to build on the land. Thus, he could not realized [sic] a profit of $320,000.00 as the shares of the corporation became worthless as it had lost the only asset/capital by the actions of the Defendants/Shareholders/Directors fraudulently transferred away all of its capital and asset.
> f) As a result of the above, Plaintiff had to file for bankruptcy protection and the instant adversary proceeding.
> g) As a result of the above, Plaintiff lost his original investment in the corporation in the amount of $65,732.20 as the Defendants divested the corporation of title over the land [sic].
> h) As a result of the above, Plaintiff incurred in $3,049.87 in expenses [sic] related to defending himself, personally, against the actions of the Defendants in state court.
> i) As a result of the above, Plaintiff incurred in $1,350.00 in air fare [sic] to travel from Boston to San Juan, PR to defend against the Defendant's above stated actions.

Whereas, on July 17, 2013, the Court entered a judgment against the Defendants, (i.e., Defendants, Pablo L. Meléndez Bonilla, Nydia María Negrón Contreras, and the conjugal partnership composed of Pablo L. Meléndez Bonilla and Nydia María Negrón Contreras), "jointly and individually" in the total amount of $260,602.07; and

Whereas, on August 14, 2013 the Clerk issued a Certification of Judgment for Registration in Another District and a Writ of Execution;

Whereas, on August 20, 2013, Nazario filed a Motion Requesting Reconsideration and Dismissal, seeking removal of the default judgment against him for lack of notice, adding "[t]his case is a frivolous one from the plaintiff, as he made a forum shopping, to avoid justice in Puerto Rico, and knowing most of the defendants cannot defend themselves in this court;" and

Whereas, Nazario indicated that the only count pertaining to him was Count I and that he dismissed the Puerto Rico action against the Debtor, but not Marcaribe which was not in bankruptcy; and

Whereas, on September 18, 2013, the Court denied Nazario's Motion; and

---

j) As a result of the above, Plaintiff has incurred in $38,719.00 in attorney's fees [sic] post bankruptcy petition for this adversary proceeding and state court consulting in Puerto Rico by the Oppenheimer Law Group in San Juan, Puerto Rico and the Perez-Kudzma Law Office, P.C. in Weston, MA.
k) Plaintiff believes that the actions of the Defendants as they relate to the violations of the automatic stay have caused me [sic] at least $3,000.00 in damages as he has lost opportunities to secure employment and other business opportunities.

(footnotes omitted).

Whereas, approximately ten months later, on July 15, 2014, Meléndez filed a "Motion for Relief of Judgment pursuant to Rules 55 and 60(b) of the FRCP," alleging that the adversary proceeding commenced by the Plaintiff was "part of a pattern of abuse of process by him with the intent of achieving certain legal remedies by forum shopping under fraudulent pretenses that otherwise he would not be able to get in the proper forum and venue that correspond to the courts of Puerto Rico;" and

Whereas, Meléndez in his Motion disputed the facts alleged in the Plaintiff's Complaint, stated that he is personally liable for the mortgage on the Property, and explained why he and his spouse and their conjugal partnership "could not make arrangements to take care of their defense," asserting that Negrón was very ill in the beginning of 2013, suffering from hypothyroidism, toxic myopathy, rhabdomyolysis, and arterial hypertension, as well as serious memory loss and confusion, that he and his spouse lacked familiarity with attorneys in Massachusetts and lacked the financial resources to engage an attorney or to travel to Massachusetts; and

Whereas, Meléndez also asserted that he did not receive notice of the bankruptcy petition, the proof of claim bar date, or proper notice of the request for default judgment, or notice of the Motion to Establish and Assess Damages;[6] and

---

[6] On May 14, 2013, the Court scheduled a hearing on the Motion for Entry of Default Judgment for June 5, 2013. On May 20, 2013, the Plaintiff filed a Certificate of Service stating "Now Comes Debtor and hereby states that notice of the above hearing on Motion For Entry of Default was mailed on April 29, 2013," a date on the certificate of serve that preceded the issuance of the Notice of Nonevidentiary Hearing.

On June 13, 2013, the Court issued a Notice of Nonevidentiary Hearing scheduling a hearing on the Plaintiff's Motion to Establish and Assess Damages for July 18, 2013. The notice required service of a copy of the notice "upon all parties entitled to notice

8

Whereas, Meléndez further argued that the damages assessed bear no relation to the claims for relief in the Complaint and are unsupported by admissible evidence such as bills, invoices or other documents; and

Whereas, Meléndez asserted relative to the relief requested under Fed. R. Civ. P. 60(b), made applicable to this proceeding by Fed. R. Bankr. P. 9024 that he, his spouse and their conjugal partnership have meritorious defenses; and

Whereas, on July 29, 2014, Nazario filed a "Motion for Relief of Judgment Pursuant to Rules 55 and 60(b) of the FRCP" raising issues of forum shopping, abuse of process and improper venue; and

Whereas, the Plaintiff filed Responses to both motions; and

Whereas, the Plaintiff also filed a Supplemental Opposition to Meléndez's Motion for Relief from Judgment disputing the facts set forth in that motion and attaching multiple documents, many in Spanish; and

Whereas, on October 1, 2014, Judge Hillman entered orders deferring rulings on the motions for relief from judgment; and

Whereas, on October 2, 2014, Judge Hillman, citing Fed. R. Bankr. P. 1014(a), issued an order to show cause requiring the Plaintiff to show cause why the Court should not transfer the adversary proceeding to the United States Bankruptcy Court for the District of Puerto Rico; and

---

forthwith" and the filing of a certificate of service with respect to the notice "seven (7) days after the date of issuance" of June 13, 2013 (i.e. June 20, 2013). On July 10, 2013, the Plaintiff served Meléndez by regular United States mail, resulting in at the very most five days notice of the hearing.

9

Whereas, the Plaintiff filed a Response, stating "[t]his matter has been fully adjudicated on the merits as to all Defendants. This Court granted a motion to dismiss on the merits of the Complaint -- after a hearing -- in favor of FirstBank Puerto Rico, Tribunal de Primera Instancia Sala de San Juan (Puerto Rico First Instance Tribunal) and the Honorable Judge Aileen Navas Auger;" and

Whereas, on March 12, 2015, Judge Hillman released the order to show cause and did not transfer the adversary proceeding to the United States Bankruptcy Court for the District of Puerto Rico; and

Whereas, on August 7, 2015, by Order of Chief Judge Melvin S. Hoffman the Debtor's bankruptcy case and this adversary proceeding were assigned to the undersigned; and

Whereas, this Court issued a Notice of Inactivity on May 6, 2016, to which only Meléndez and Nazario responded; and

Whereas, the Plaintiff's bankruptcy case has been fully administered and the Chapter 13 Trustee has filed a Final Report and Account and request for discharge with respect to the Debtor's 36-month plan, showing disbursements totaling $2,174.66; and

Whereas, the Debtor completed his plan payments of $48 per month, and paid in full a priority claim to the Internal Revenue Service in the sum of $1,458.70 and unsecured claims totaling $598.69; and

Whereas, the Debtor has received a discharge, and the Chapter 13 case is ready to close; and

Whereas, the Court has reviewed the submissions of the parties and the record of proceedings in this case and finds that neither Meléndez nor Nazario are listed on the creditor matrix and claims register and were not served with the notice of case commencement; and

Whereas, because neither Meléndez nor Nazario were listed on the creditor matrix, they did not receive notice from the Bankruptcy Noticing Center of the section 341(a) meeting or the deadline for filing proofs of claims; and

Whereas, the Plaintiff never moved for defaults against Meléndez and Nazario prior to seeking default judgments; and

Whereas, the Plaintiff's Complaint fails to set forth cogent claims for relief and, in particular, as to Nazario, fails to set forth how the Plaintiff was damaged by two continuances prior to the dismissal of the Puerto Rico complaint by Meléndez against the the Debtor personally; and

Now, therefore, the Court concludes that grounds exist to vacate the default judgments entered against Meléndez and Nazario under Fed. Civ. P. 60(b)(6). In Ungar v. Palestine Liberation Org., 599 F.3d 79 (1st Cir. 2010), the United States Court of Appeals for the First Circuit stated:

> Although Rule 60(b)(6) applies to motions that seek to relieve parties from judgments taken by default, a decision about whether to vacate a default judgment involves a unique "blend of centrifugal and centripetal forces." This is so because, in addition to the usual medley of factors that influence the resolution of Rule 60(b) motions, granting or withholding relief from a default judgment entails balancing the importance of finality in litigation against the desirability of deciding cases on the merits. Such decisions tend to rest on fact-specific considerations informed by the nature and circumstances of the particular case. A variety of factors can help an

> inquiring court to strike the requisite balance. Such factors include the timing of the request for relief, the extent of any prejudice to the opposing party, the existence or non-existence of meritorious claims of defense, and the presence or absence of exceptional circumstances. This compendium is neither exclusive nor rigidly applied. Rather, the listed factors are incorporated into a holistic appraisal of the circumstances. In a particular case, that appraisal may—or may not—justify the extraordinary remedy of vacatur.

Ungar, 599 F.3d at 83-4 (citations omitted, footnotes omitted). The Court finds exceptional circumstances exist here. When the Plaintiff's need to reorganize under Chapter 13 to address a relatively small amount of debt is contrasted with his extensive involvement in litigation in Puerto Rico involving the dissolution of Marcaribe and the rights and obligations of the parties concerning that entity and potentially valuable real estate in Puerto Rico encumbered by a mortgage for which Meléndez asserts he is personally liable, this Court is compelled to give credence to the forum shopping arguments advanced by Meléndez and Nazario, as well as the assertion of meritorious defenses to the Plaintiff's Complaint. The Plaintiff's decision to commence an action in Massachusetts to obtain relief that he might not have been able to obtain in Puerto Rico with respect to Property owned by Marcaribe which the Debtor claims is worth $600,000 in his Complaint as well as on amended Schedule C-Property Claimed as Exempt filed on June 5, 2013, coupled with the prejudice to Meléndez due to the Plaintiff's failure to list Meléndez on the creditor matrix and in having to defend in Massachusetts, leads to the inescapable conclusion that the Plaintiff engaged in forum shopping and gambled that Meléndez would default due to the difficulties and expenses associated with defending an action in Massachusetts. Where Meléndez commenced the action in Puerto

Rico against Marcaribe and the Debtor, the Debtor's failure to list Meléndez as a creditor is particularly egregious in view of the allegations in his Complaint set forth above and where he asserts substantial claims against Meléndez of approximately $170,000.00 and has obtained an execution in the sum of $260,602.07.

In view of the foregoing, the Court shall enter orders vacating the default judgments against Meléndez and Nazario. The Court shall enter a further order dismissing this adversary proceeding for lack of jurisdiction. This adversary proceeding is neither a core proceeding nor a proceeding related to a bankruptcy case. *See* 28 U.S.C. 157(a), (b), 1334. As the Debtor's case has been fully administered, the outcome of the disputes among the parties can have no effect on the bankruptcy estate. *See* <u>In re G.S.F. Corp.</u>, 938 F.2d 1467, 1475 (1st Cir. 1991).

By the Court,

*/s/ Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: August 4, 2016